United States Bankruptcy Court

District of Massachusetts

|  |  |
|---|---|
| In re<br><br>KATHERINE CHEVALIER,<br><br>Debtor | Chapter 7<br>Case No. 04-43689 |

## MEMORANDUM OF DECISION

Before the Court is a "Trustee's Objection to Debtor's Claims of Exemptions" (the "Objection to Exemptions"). The Chapter 7 trustee contests the Debtor's purported exemption of three life insurance policies.

I. FACTS AND POSITIONS OF THE PARTIES

Katherine Chevalier (the "Debtor") filed a case under Chapter 7 of the Bankruptcy Code on June 28, 2004. Steven Weiss was duly appointed as Chapter 7 trustee (the "Trustee"). Amongst the assets listed by the Debtor in Schedule B of her Schedules of Assets and Liabilities are her interests in three insurance policies issued by Prudential Insurance (jointly, the "Policies"). The first policy, No. RO 130 144 (the "RO Policy"), and the second policy, No. 99 207 392 (the "99 Policy"), are owned by the Debtor and insure her life. Each lists the Debtor's "estate" as the beneficiary.[1] The Debtor listed the cash

---

[1] It is uncontested that this reference to the Debtor's "estate" refers to the Debtor's eventual probate estate.

surrender value of the RO Policy as $27,448.00[2] and the cash surrender value of the 99 Policy as $6,725.45. The third policy, No. 32 385 214 (the "32 Policy"), is also owned by the Debtor, but insures the life of the Debtor's ex-husband, Douglas Chevalier ("Douglas"). The Debtor is the beneficiary and she listed the cash surrender value of this policy as $10,790.00. The Debtor obtained her interest in the policy incident to a Florida state court order in conjunction with a divorce from Douglas.

On her Schedule C, the Debtor elected, pursuant to 11 U.S.C. § 522(b), to take the Massachusetts state exemptions, and claimed all three policies as fully exempt pursuant to Massachusetts General Laws c.175 §§ 125 & 126 ("§ 125" and "§ 126").[3]

M.G.L. c.175 § 125 provides:

> If a policy of life or endowment insurance is effected by any person on his own life or on another life, in favor of a person other than himself having an insurable interest therein, the lawful beneficiary thereof, other than himself or his legal representatives, shall be entitled to its proceeds against the creditors and representatives of the person effecting the same, whether or not the right to change the named beneficiary is reserved by or permitted to such person; provided, that, subject to the statute of limitations, the amount of any premiums for said insurance paid in fraud of creditors, with interest thereon, shall enure to their benefit from the proceeds of the policy; but the company issuing the policy shall be discharged of all liability thereon by payment of its proceeds in accordance with its terms, unless before such payment the company shall have written notice, by or on behalf of a creditor, of a claim to recover for certain premiums paid in fraud of creditors, with specification of the amount claimed. No court, and no trustee or assignee

---

[2]This figure appears to have been provided in error. The Objection to Exemptions attached statements of cash surrender values from the insurer. While the Debtor listed the value of the RO Policy as $27,448.00, the insurer's statement listed the cash surrender value at June 16, 2003 as $28,793.24. At hearing, the Trustee also provided the Court with a chart and copies of the policies, which similarly stated the cash surrender value at June 16, 2003 as $28,793.24. The Debtor does not contest that revised number.

[3]Where a beneficiary's interest would be protected by Massachusetts law, the cash surrender value of the policy is protected and exempt from the bankruptcy estate as well. In re Sloss, 279 B.R. 6 (Bankr. D. Mass. 2002).

2

> for the benefit of creditors, shall elect for the person effecting such insurance to exercise such right to change the named beneficiary.

M.G.L. c.175 § 126 provides:

> Every policy of life or endowment insurance made payable to or for the benefit of a *married woman*, or after its issue assigned, transferred or in any way made payable to a married woman, or to any person in trust for her or for her benefit, whether procured by herself, her husband or by any other person, and whether the assignment or transfer is made by her husband or by any other person, and whether or not the right to change the named beneficiary is reserved by or permitted to the person effecting such insurance, shall enure to her separate use and benefit, and to that of her children, subject to the provision of section one hundred and twenty-five relative to premiums paid in fraud of creditors and to sections one hundred and forty-four to one hundred and forty-six, inclusive. No court, and no trustee or assignee for the benefit of creditors, shall elect for the person effecting such insurance to exercise such right to change the named beneficiary.

(Emphasis added).

The Trustee objects to the exemptions, contending that none of the Policies meet the requirements of §§ 125 or 126. With respect to § 125, the Trustee argues that the exemption does not apply to either the RO or 99 Policies because § 125 only applies when "a policy of life or endowment insurance is effected by any person on his own life or on another life, in favor of a person *other than himself*." M.G.L.A. c.175 § 125 (emphasis added). The Trustee maintains that, because the listed beneficiary on both policies is the "insured's estate," the policies are not in favor of another, but in favor of the Debtor. He argues that designating the "insured's estate" is no different than listing the insured herself.

The Trustee also contends that the 32 Policy fails to meet two other requirements of § 125. First, the Trustee argues that, because the policy is on the life of the Debtor's *ex-spouse*, she fails to have a valid "insurable interest" on the life of the insured. Second, the Trustee maintains that §125 does not exempt a policy whose beneficiary has changed

3

from the time the policy issued. The 32 Policy beneficiary was changed by order of the Florida state court.

Finally, the Trustee asserts that § 126 can not provide an exemption for any of the policies because the Debtor was unmarried at the time of the filing of her bankruptcy petition, and § 126 only protects married women.

In defense of her exemptions, the Debtor denies that she is the beneficiary of the RO or 99 Policies. She notes that, by definition, she could never be the beneficiary of life insurance policies which pay off only upon her death. Accordingly, she argues, she is a separate entity from her probate estate for the purposes of § 125.

As for the 32 Policy, the Debtor maintains that she has an insurable interest on Douglas's life because the policy was turned over to her at the time of her divorce from Douglas in lieu of alimony. The Debtor further asserts that the change in beneficiary does not obviate the exemption provided by § 125; first, because the beneficiary of that policy was changed by mandate of the Florida state court and, second, because cases in which the exemption has been overruled on the basis of a changed beneficiary have been restricted to circumstances in which a debtor fraudulently conveyed his or her interest in the policy.

Finally, the Debtor asserts that § 126 *is* applicable to her as an unmarried woman. She says that the legislative intent of § 126 and subsequent case law demonstrate that the exemption is available to married and unmarried women alike.

II.   DISCUSSION

   A.   Exemptions Claimed Pursuant to § 125

Section 125 is designed to protect a defined class of beneficiaries. So long as an individual falls within the class, and policy premiums were not paid in fraud of creditors, the exemption is available. In re Sloss, 279 B.R. 6, 14 (Bankr. D. Mass. 2002). In order to fall within the exempted class, the beneficiary must: (1) have been the original beneficiary when the policy was "effected"; (2) be an entity other than the owner; and (3) have an insurable interest in the insured. Id.

Here, there have been no allegations of improper policy premium payments. However, with respect to the RO and 99 Policies, the question remains as to whether designation of the owner's probate "estate" as beneficiary can meet the conditions required by § 125. This Court holds that the mere designation of a probate estate as beneficiary disqualifies a policy from that statutory exemption.

Section 125 requires that the beneficiary be the original beneficiary. In re CRS Stream, Inc., 217 B.R. 365, 369 (Bankr. D. Mass. 1998) (citing to McCarthy v. Griffin, 299 Mass. 309, 311-12 (1938)) (holding that, for § 125 to apply, the beneficiary may not have been changed since the policy was first issued).[4] The availability of the exemption is also conditioned on the beneficiary having an insurable interest. Were both of those statutory

---

[4]The requirement that the policy beneficiary not have been changed since the policy issuance is not an *express* requirement of § 125. Rather, the requirement is drawn from the reference in the section to a policy "effected" by an insured. The Massachusetts Supreme Judicial Court construes this language to require that, for § 125 to apply, the beneficiary not have been changed since the policy was first issued. In re CRS Stream, Inc., 217 B.R. 365, 369 (Bankr. D. Mass. 1998) (citing to McCarthy v. Griffin, 299 Mass. 309, 311-12 (1938))); see also, In re Caron, 305 B.R. 614, 616 (Bankr. D. Mass. 2004).

5

conditions satisfied by the simple designation of the owner's probate estate as beneficiary, the owner of the policy could undermine the statute by retaining the exemption while changing the beneficiary with a simple alteration to his or her estate plan. The true beneficiary could change many times without affecting the exemption. Furthermore, the beneficiary of a probate estate need not have an insurable interest. In order to enjoy the protections of § 125, the beneficiaries of a policy must be originally specified, and the owner must be able to demonstrate their insurable interests. Because this can not be accomplished by a mere reference to a debtor's probate estate, the protection of § 125 is unavailable.[5]

As for the 32 Policy, the Debtor is correct to note that she has an insurable interest in the policy notwithstanding her divorce from Douglas. Section 125 requires that an insurance policy have a beneficiary with "an insurable interest therein." M.G.L.A. c. 175 § 125 (2005). Thus, § 125 cannot be applied to policies where the insured "is not so connected with [the beneficiary] as to make the continuance of his life of some real interest to him." In re Caron, 305 B.R. 614, 616 (Bankr. D. Mass. 2004) (citing to Connecticut Mut. Life. Ins. Co. v. Schaefer, 94 U.S. 457, 460 (1876)). Rather, a beneficiary with an insurable interest must have "some reasonable expectation of pecuniary benefit or advantage from the continued life of [the insured]." Id. A wife is presumed to have an insurable interest in the life of her husband. Id. The insurable interest must have been

---

[5] The Trustee further argued at trial that the 99 Policy cannot be exempted under § 125 because the beneficiary has been changed since the policy was effected. Having ruled that neither the RO nor 99 Policies can be exempted under § 125 because they are in favor of the Debtor's probate estate, the Court need not address the change in beneficiary as it relates to the 99 Policy.

6

present at the time the policy was effected, but need not continue to be present at the time of the bankruptcy filing. Caron, 305 B.R. at 616; Tyler v. Odd Fellows Mut. Relief Assoc., 145 Mass. 134 (1887); Green v. Green, 13 Mass. App. Ct. 340 (1981). Here, the Trustee does not contest that, at the time the policy was effected, the Debtor was married to Douglas. Their subsequent divorce does not, therefore, obviate her insurable interest in the 32 Policy.

The 32 Policy ultimately fails under § 125, however, because there has been a change in beneficiary since the 32 Policy was issued. As the Debtor points out, cases in which a § 125 exemption has been disallowed for a change in beneficiary have had a common factual thread - fraud. Here, the Debtor asserts that the purpose of the change was to grant the Debtor a divorce distribution in lieu of alimony. Nonetheless, the Massachusetts Supreme Judicial Court's interpretation of § 125 makes no such distinctions. Any change in beneficiary precludes the use of the exemption.

B.    Exemptions Claimed Pursuant to § 126

The concerns which preclude use of the exemption under § 125 to protect the value in the Policies are not applicable under § 126. First, there is no requirement that the beneficiary be the original. The exemption applies even if the policy or its benefits are assigned after the policy is issued. Second, the policy need not be effected in favor of another. The policy may be obtained by the beneficiary.

The § 126 exemption is, however, conditioned on the policy being "payable to or for the benefit of a *married woman*, or after its issue assigned, transferred or in any way made

7

payable to a married woman."[6] The Trustee asserts that § 126 can not provide an exemption for any of the Policies because the Debtor is unmarried. In response, the Debtor says that the Massachusetts courts have liberally construed § 126 to include both married and unmarried women. But the case law upon which the Debtor relies is either inapposite or stands for the opposite of the construction for which the Debtor argues. The Debtor first cites to Massachusetts Linotyping Corporation v. Fielding; the relevant section states as follows:

> The Policy in question falls within the literal description of the policies to which § 126 refers, since the policy can now be said to have been 'made payable to a married woman,' the defendant, although it was originally made payable to Fielding's estate. Undoubtably the defendant would be protected by § 126 against creditors of her deceased husband, or his trustee in bankruptcy, if he had been adjudged bankrupt, or his administrator as the representative of his creditors or distributees. But it does not follow that the statute was intended to protect a person in the defendant's position against person who had acquired equitable rights in the policy itself before she acquired any rights in it. **The wording of the original statute (St. 1844, c. 82) tends to show that its purpose was to protect the beneficiary, whether a married woman or not, against the creditors of the person effecting the policy. This is the purpose disclosed by the searching examination into the origin of this statute contained in Bailey v. Wood, 202 Mass. 562, 89 N.E. 149. The wording of § 125 still confines that section to this purpose. Changes in the wording of § 126 have left that section in a form that makes a broader construction arguable, but we do not believe that these changes were intended to have that effect.**

312 Mass. 147, 152-53 (1942) (emphasis supplied).

---

[6]In In re Sloss, 279 B.R. at 15, n. 11, this Court observed in connection with § 126: "Neither party raised, and thus this Court does not address, whether this gender-based distinction passes muster under the Equal Protection Clause of the 14th Amendment." During two hearings in connection with this matter, the Court again expressed the equivalent of constitutional "indigestion" with exemptions restricted by either gender or marital status. Nevertheless, the Debtor failed to raise the issue in her papers. Accordingly, the Court deems any challenge of the statute on constitutional grounds waived.

8

This Court reads the foregoing text to mean that the *original, unamended* statute had a purpose of protecting both married and unmarried women. Section 126, *as amended*, however, limited its application to married women. The second case cited by the Debtor, Goldman v. Moses, 287 Mass. 393 (1934), also fails to persuade this Court that § 126 applies to married and unmarried women alike. The issue in Goldman was not the effect of a beneficiary being unmarried, but rather the effect, if any, of the beneficiary being married to someone other than the insured; and the Supreme Judicial Court in Goldman v. Moses failed to reach that inapposite issue, deciding that case on other grounds. Id at 396-97.

With respect to the RO and 99 Policies, the beneficiary is not the Debtor but her probate estate. As noted by the Debtor herself, she and her probate estate are not synonymous. Accordingly, § 126 is inapplicable to those policies because they have not been made "payable to or for the benefit of a married woman." M.G.L.A. c. 175 § 126 (2005).

As for the 32 Policy, its assignment to the Debtor was made incident to a divorce proceeding. This Court has previously noted that where a policy has been previously obtained for the benefit of a married woman, her subsequent divorce will not impact the exemption.[7] But the situation here is not one in which a married woman is beneficiary of

---

[7]Massachusetts courts have ruled that divorce does not abrogate the protections of § 126. Handrahan v. Moore, 332 Mass. 300, 303, 124 N.E.2d 808, 810 (1955); Green v. Green, 13 Mass. App. Ct. 340, 433 N.E.2d 92 (1982). Rather, where a divorce judgment requires that a husband maintain the existing life insurance policies in favor of his ex-wife, the bar to changing beneficiaries operates to give the wife an equitable interest in the policies. Handrahan, 332 Mass. At 303, 124 N.E. 2d at 810.

Sloss, 279 B.R. at 19.

a policy before marital dissolution and would be otherwise be entitled to the exemption but for the change in her marital status.  Rather, the Debtor first received her rights as beneficiary of the policy by an assignment ordered by the Florida state court.  Accordingly, she was not beneficiary before the time of the divorce and was obviously unmarried when she first became beneficiary of the policy (and continued to be unmarried on the date of the commencement of this case).  The § 126 exemption is not, therefore, available to protect the Debtor's interest in that policy.

III.   CONCLUSION

For all the foregoing reasons, the Objection to Exemptions is SUSTAINED.  The Debtor's interests in the subject policies and their cash surrender values are not exempt.

A separate order in conformity with this Memorandum of Decision shall enter herewith.

DATED: August 29, 2005                    By the Court,

                                          _____
                                          Henry J. Boroff
                                          United States Bankruptcy Judge

10